IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MELISSA HARVILLE,** | |
| Plaintiff, | C.A. No. 4:10-cv-01656 |
| v. | |
| **TEXAS A&M UNIVERSITY,** **GUY MORTENSEN, individually and in his** **official capacity as Director of Policy &** **Practice Review for Texas A&M University,** **KATHRYN J. RYAN, individually and in** **her official capacity as Assistant Professor** **for Texas A&M University, and** **JILLAINE MAES, individually and in her** **official capacity as Assistant Department** **Head for Texas A&M University.** | Jury Trial Demanded |
| Defendants. | |

**PLAINTIFF MELISSA HARVILLE'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**
_____

Melissa Harville, (hereinafter referred to as "Plaintiff" or "Harville") files this Response to Defendants Texas A&M University (hereinafter referred to as "TAMU"), Guy Mortensen, in his individual and official capacities (hereinafter referred to as "Mortensen"), Dr. Kathryn Ryan, in her individual and official capacities (hereinafter referred to as "Ryan"); and Jillaine Maes', in her individual and official capacities (hereinafter referred to as "Maes") Motion for Summary Judgment (hereinafter referred to as "Defendants' Motion").  Defendants TAMU, Mortensen, Ryan, and Maes are hereinafter also referred to collectively as "Defendants."  For the reasons stated below, and because substantial material fact issues exist as to every claim brought by Plaintiff, Defendants' Motion should be denied.

# I.

## <u>SUMMARY</u>

Plaintiff Harville raises claims against TAMU, Mortensen, in his official capacity, Ryan, in her official capacity, and Maes, in her official capacity, under the Rehabilitation Act of 1973 ("Rehabilitation Act"), against Mortensen, Ryan, and Maes in their individual capacities under the Family and Medical Leave Act ("FMLA") and against Mortensen, Ryan, and Maes in their official capacities under the Americans with Disabilities Act ("ADA").

Plaintiff was employed by TAMU to work in the Biology Department in the laboratory run by Ryan.  She worked there from May 2008 until her termination on December 21, 2009.  The termination letter stated the reason for termination was due to "…results of an investigation that found you [Harville] violated System policies, regulations and University rules, regarding leave and failure to return to work."  *See Exhibit 1, Termination Letter*.  However, Plaintiff was on FMLA leave during this time and did not violate any rules, regulations or policies.  In fact, it was the Defendants who violated TAMU rules, regulations, and policies in terminating Ms. Harville.  Specifically, Plaintiff was threatened with termination while she was on FMLA protected leave and told "to report in each day of [her] absence"[1] by Ryan, a demand which was in direct contravention with TAMU's written FMLA policy stating that an "employee on leave is required to report periodically (two week intervals are recommended) on his or her status and intention to return to work."  *See Exhibit 3, FMLA policy, page 4, Section 4.2.7.*

Furthermore, despite Maes' written request to Plaintiff for updated medical information "when you return,"[2] Mortensen stated in a termination request that Plaintiff's failure to update medical information during her absence constituted a rationale for termination.  In the face of

---

[1] *See Exhibit 2, November 30, 2009 Email from Ryan to Harville.*
[2] *See Exhibit 4, November 10, 2009 Email from Maes to Harville.*

Ms. Harville's FMLA-protected leave status, Mortensen also justified the termination decision by stating that "they desperately need to fill the position with an employee that can work." *See Exhibit 5, Request for Termination.*

Accordingly, Ms. Harville alleges that her FMLA leave and perceived disability claims under the ADA and Rehabilitation Act were motivating factors in her termination. Material fact issues exist regarding all of Ms. Harville's claims. Therefore, Defendants' Motion for Summary Judgment must be denied.

## II.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Glover-Dorsey v. University of Tex. Med. Branch*, 147 F. Supp. 2d 656, 661 (S.D. Tex 2001), *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" if they require resolution by a trier of fact. *Id.* Disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Id.* If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.* Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999).

3

## III.

### ARGUMENT AND AUTHORITIES

### A.  FMLA Interference and Retaliation

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under" the act.  29 U.S.C. § 2615(a)(1). In addition, the FMLA prohibits employers from "discharg [ing] or in any other manner discriminat[ing] against an individual for opposing any practice made unlawful" by the act. *Id.* § 2615(a)(2).

#### 1.  *Establishing a Prima Facie case of FMLA interference.*

To establish a *prima facie* case for interference with these substantive FMLA rights, a plaintiff must show (1) she is an eligible employee under the FMLA; (2) the defendant is an employer subject to the requirements of the FMLA; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA.  *Hunt v. Rapides Healthcare Systems, LLC*, 277 F.3d 757, 763 (5th Cir. 2001).  The FMLA also prohibits employer activities that "deter employees' participation" in activities protected by the FMLA. *See Arizmendiz v. University of Texas at El Paso*, 536 F.Supp.2d 710, 715-16 (W.D. Tex. 2009).

For the purposes of their Motion, Defendants concede that, at the very least, fact issues exist regarding the first four prongs of the analysis which would preclude summary judgment on any of the first four prongs.  *See Defendants' Motion, page 14.*  The Defendants' only two arguments are centered on the fifth prong.  They argue (a) that Ms. Harville cannot show she was ever denied time off, and (b) that the Defendants did not interfere with Ms. Harville's rights under the FMLA.

### a.   *Ms. Harville was denied time off - she was denied protected FMLA leave*

The FMLA entitles an eligible employee to take up to 12 weeks of protected leave per year.  Courts have upheld an employer's decision to base the determination of when this year starts for the purposes of the FMLA on the employer's fiscal year, rather than on a calendar year.  *See Mahoney v. Ernst & Young LLP,* 487 F.Supp.2d 780, 785 (S.D.Tex. 2006) (finding that the employee's allotment of FMLA leave reset at the start of the employer's fiscal year when it elected to use its fiscal year, not a calendar year, for purposes of calculating FMLA leave).  TAMU's University System Regulation 31.03.05 (the "FMLA policy") establishes that "an eligible employee may take up to 12 weeks of leave during a *fiscal* year for any of the following reasons."  (emphasis added)  *See Exhibit 3, FMLA policy, page 2, Section 2.1.*  TAMU's fiscal year "runs from September 1st through August 31st."  *See Exhibit 6, Leave Balance and Fiscal Years Website.*  Accordingly, Ms. Harville's status as an eligible employee should not be in dispute.  *See also Defendants' Motion, page 14* (conceding the third prong of the *Hunt* analysis for the purposes of Defendants' Motion).

Defendants' Motion argues that "[f]rom the time she first requested FMLA leave in July until her termination in December, she took all of July [2009], August 1-24 [2009], seven days in September [2009], October 1, 5, 7, 14, 15, 20-31 [2009], all of November and December 1-21 [2009]."  *See Defendants' Motion, page 15.*  Assuming, *arguendo,* that these dates are correct, then Ms. Harville took a total of 39 work days of FMLA leave in the September 1, 2008 through August 31, 2009 fiscal year, and a total of 57 work days of FMLA leave in the September 1, 2009 through August 31, 2010 fiscal year.  39 work days is less than 12 work weeks, and 57 days is also less than 12 work weeks.  Ms. Harville did not exceed or even reach her 12 work weeks of FMLA protected leave during either fiscal year.  Therefore, under TAMU's own FMLA policy, Ms. Harville clearly had FMLA protected leave remaining when

the Defendants terminated her.  At the very least, Defendants' assertion that none of Plaintiff's FMLA requests were denied is a question of fact that cannot be disposed of on summary judgment.

### b.  The Defendants interfered with Ms. Harville's rights under the FMLA

TAMU's FMLA policy establishes "the basis and procedure for administering the Family and Medical Leave Act."  *See Exhibit 3, FMLA policy, page 1.*  Section 3.1 of the FMLA policy states:

> An eligible employee who takes FMLA leave is entitled to be returned to the same position that the employee held when the leave commenced or to an equivalent position with equivalent benefits, pay and other terms and working conditions of employment.

*See Exhibit 3, FMLA policy, page 3, Section 3.1.*

Defendants' Motion admits that Ms. Harville was an eligible employee, it is uncontested that Ms.  Harville took FMLA leave, and it is uncontested that Ms. Harville was not returned to the same or equivalent position that she held when the leave commenced.  At face value, the Defendants have violated the FMLA policy that governed Ms. Harville's leave. Maes stated that it was not the FMLA policy, but rather, the Sick Leave policy which Ms. Harville violated.

> Q:  Okay.  Why was Ms. Harville terminated?
> A:  For violation of leave policies.
> Q:  FMLA leave policies?
> A:  No.  Sick leave policies.

*See Exhibit 7, Deposition of Jillaine Maes, page 89.*

Maes acknowledged that Ms. Harville was not on paid leave at the time she was terminated.  However, she erroneously believed that Sick leave policy reporting requirements still applied to Ms. Harville.

Q:  Okay.  So in December, what leave policies applied to Ms. Harville?

A:  Even though she didn't have sick leave to use, the sick leave policy still governed her.

*See Exhibit 7, Deposition of Jillaine Maes, page 60.*

A:  She wouldn't have had any paid hours left, but she still would have been guided by the policies.  The policies don't stop applying to people just because they no longer have any paid hours left.

*See Exhibit 7, Deposition of Jillaine Maes, page 63.*

Maes is wrong.  Section 6.1.2 of the FMLA policy states:

> **Normal sick leave notice requirements apply for the paid portions of leave**.  The notice must comply with the usual rules for requesting leave, except in emergency situations.  However, FMLA leave may not be denied if the employee gives timely oral, written, or other notice of the need for leave, but fails to follow the system's or a system member's leave request procedures.  (emphasis added)

*See Exhibit 3, FMLA policy, page 6, Section 6.1.2.*

TAMU's FMLA policy states that sick leave notice requirements apply for the *paid portions of leave*.  Ms. Harville was not on paid leave when the decision to terminate her was made.  *See Exhibit 7, Deposition of Jillaine Maes, page 60.*  Therefore, Maes is incorrect in her belief that the "policies don't stop applying to people just because they no longer have any paid hours left."  *See Exhibit 7, Deposition of Jillaine Maes, page 63.*  By the very words of the FMLA policy, the Sick leave policy's notice requirements only apply to paid leave.  Ms. Harville was terminated while on unpaid leave.  The only notice policy that could be deemed to govern her at this time would be the FMLA policy.  Thus, a question of fact exists as to whether the Defendants terminated Ms. Harville for allegedly violating the FMLA policy, despite the fact that the FMLA policy does not allow this result.

Section 6.1.2 further states that FMLA leave may not be denied if the employee gives timely oral, written, or other notice of the need for leave, **but fails to follow the system's or a system member's leave request procedures** (emphasis added).  *See Exhibit 3, FMLA policy, page 6, Section 6.1.2.*  Incredulously, both Maes and Ryan stated that Ms. Harville failed to

7

notify her department as required, and that this failure constituted a violation of policy warranting termination.

> Q:  Could a department require more notice than just a two-week interval?
> A:  Yes.
> Q:  Did Ms. Ryan require Ms. Harville to notify her more often than every two weeks?
> A:  Yes.

*See Exhibit 7, Deposition of Jillaine Maes, pages 90-91.*

> Q:  Had you asked her to notify you as to her whereabouts?
> A:  I asked her to notify me when she would not be coming in on a particular day.
> Q:  Did you want her to notify you every day that she wouldn't be coming in?
> A:  Yes.
> Q:  Okay.  Do you know if there's a university policy governing notification, an employee's requirements of notification?
> A:  Yes, there is.
> Q:  Did you consult that policy before telling Ms. Harville to come in – or to report in every day?
> A:  I did not look up the policy, but I was told that employees had to either come to work or let their supervisors know that they were not going to be in to work on a – if they weren't going to be in, that they needed to report that to their supervisors.

*See Exhibit 8, Deposition of Kathryn Ryan, pages 26-27.*

> Q:  Okay.  And, again, you said you don't specifically know what policies she – she violated; you were just told she violated the policy?
> A:  Based on my presentation of the – the not reporting into work and the leave, that this constituted violations of policy.  I did not ask them to circle and point out exactly which policies.  I relied on their expertise.

*See Exhibit 8, Deposition of Kathryn Ryan, page 54.*

> A:  I had issues with her reporting, and I relayed these to Mr. Mortensen and laid out what my problems were.  He reviewed them and then presented them to the – the office here.  And they were the ones that made the decision that, in fact, policies and regulations were violated and those were grounds for termination.

*See Exhibit 8, Deposition of Kathryn Ryan, page 22.*

Ryan "had issues" with Ms. Harville's failure to follow her requested leave procedures.

*See Exhibit 8, Deposition of Kathryn Ryan, page 22.*  She laid this issue out for Mortensen, and he reviewed it and further presented it as a violation of TAMU policy and grounds for

terminating Ms. Harville's employment while on FMLA leave.  The decision to terminate Ms. Harville for failing to follow leave request procedures sharply contradicts FMLA policy Section 6.1.2's admonition that FMLA leave cannot be denied for failure to follow "the system's or a system member's leave request procedures."  *See Exhibit 3, FMLA policy, page 6, Section 6.1.2.*  Mortensen identifies "University leave reporting requirements" as a basis for Ms. Harville's termination, and thus, the denial of her FMLA leave.  *See Exhibit 5, Request for Termination.*  It was not Ms. Harville who violated policies and regulations, but rather, it was Mortensen, Ryan, and Maes.

Maes admitted that Ms. Harville could not be terminated for failing to follow leave request procedures.  However, Maes then attempted to explain that terminating Ms. Harville did not constitute a denial of her FMLA leave.

> Q:  Okay.  So are you saying that even if she failed to follow leave request procedures, Ms. Harville's FMLA leave could not be denied?
> A:  Yes.
> Q:  Okay.  Do you consider termination to be an effective denial of someone's FMLA leave?
> A:  No.
> A:  Why not?
> A:  Her FMLA leave was not denied to her.  She was given all the FMLA leave that she needed.  That was not the reason for her termination.

*See Exhibit 7, Deposition of Jillaine Maes, page 73.*

Ms. Harville had not met or exceeded her 12 weeks of FMLA leave in either fiscal year.  There is, as previously stated, a definite question of fact as to whether Ms. Harville was "given all the FMLA leave that she needed."  Furthermore, on November 30, 2009, Ms. Harville sent an email to Ryan, which was forwarded by Ryan to Mortensen, stating "I'm am still sick, but intend to return to work as soon as I am able."  *See Exhibit 2.*  Mortensen, Ryan, and Maes were aware that Ms. Harville was sick and was on FMLA leave at the time the decision to terminate her was made.  Ms. Harville's termination was not only a denial of her continued

right to take FMLA leave, but was also a failure to return her to the same or equivalent position upon her return.  Maes' belief that Ms. Harville's "FMLA leave was not denied to her" is, at the very least, a question for the trier of fact.

### 2.  Establishing a Prima Facie case of FMLA retaliation.

In order to establish a *prima facie* case of retaliatory discharge, the employee must show that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge. *Hunt v. Rapides Healthcare Sys., Inc.,* 277 F.3d 757, 768 (5th Cir. 2001).

Ms. Harville meets her prima facie case.

(1)     On October 19, 2009, Ms. Harville went out on full-time FMLA leave.

(2)     On December 21, 2009, Ms. Harville was terminated.

(3)     There is a clear causal link between the protected activity and the discharge. Ms. Harville was terminated *during* her FMLA leave.  At a minimum, based on the temporal proximity between the FMLA protected leave and Ms. Harville's termination, she has established her prima facie case of discrimination.

For the purposes of their Motion, the Defendants concede the first two prongs of the *Hunt* analysis, arguing only that there was not a causal link between the protected activity and the discharge.  Courts shall consider the temporal proximity between the FMLA leave and the retaliation when evaluating whether the adverse employment action was causally related to the FMLA protection. *Mauder v. Metro. Transit Auth.,* 446 F.3d 574, 583 (5th Cir. 2006).  As a *prima facie* element, this third prong is not an ultimate showing of liability, but merely determines whether there is enough evidence to require an employer to respond. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) (observing that the burden is "not onerous" and only creates a "presumption"), *see also Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993) (finding the causal link prong established where "[t]he only evidence available to support an inference of discrimination ... is the temporal proximity of the

10

protected activity and the adverse employment action." The standard for establishing the causal link element in a retaliation claim is less stringent than a "but for" standard. *Long v. Eastfield Coll.,* 88 F.3d 300, 305 n. 4 (5th Cir. 1996). In this case, the adverse employment action occurred *during* the protected activity. As shown above, Ms. Harville had not exceeded or even met her quota of FMLA protected leave during the instant fiscal year. Contemporaneousness is surely enough evidence of temporal proximity to satisfy the Plaintiff's burden of establishing a causal link element in the context of summary judgment. Accordingly, Ms. Harville has met her prima facie elements of FMLA discrimination.

### 3.  The Defendants Lack Legitimate, Non-retaliatory Reasons for Each Adverse Employment Action, Particularly Ms. Harville's Discharge.

Defendants' Motion alleges that the Defendants had good reason to discharge Ms. Harville, namely, that Ms. Harville failed to notify Ryan daily that she intended to use her FMLA leave. Defendants' Motion cites TAMU's Sick Leave policy for this daily notification requirement. *See Defendants' Motion, page 20.* However, as explained above, the Sick Leave policy only applies to paid portions of leave. *See also Exhibit 3, FMLA policy, page 6, Section 6.1.2.* When Ms. Harville was terminated, she was on unpaid FMLA leave. Therefore, the Sick Leave notice requirements are irrelevant. Furthermore, Section 6.1.2 of TAMU's FMLA policy states that FMLA leave may not be denied if the employee gives timely oral, written, or other notice of the need for leave, **but fails to follow the system's or a system member's leave request procedures** (emphasis added). *See Exhibit 3, FMLA policy, page 6, Section 6.1.2.*

The Defendants repeatedly attempted to shift the burden of FMLA leave administration from themselves, as required by TAMU policy, to Ms. Harville. Further examples can be found in the events surrounding the Defendants' efforts (or lack thereof) to secure an updated FMLA form in December 2009. It is telling that, unlike previous months in which Maes

11

forwarded FMLA certifications to be filled out by Ms. Harville and her doctors, in December 2009 no such form was provided to Ms. Harville.  Despite this, Defendants have asserted that Ms. Harville's failure to provide an updated FMLA certification prior to December 21 was responsible for the decision to terminate her.

> Q:  Okay.  So basically if she had responded to this December 11th e-mail prior to what date, do you think, would have been okay?
> A:  Prior to the 21st when she was terminated.

*See Exhibit 7, Deposition of Jillaine Maes, page 56.*

> Q:  You said earlier that if she had gotten you the certification, she wouldn't have been terminated at that time?
> A:  That is correct.
> …
> Q:  So what makes you think she wouldn't have been terminated?
> A:  We would have had the documentation that we needed.
> …
> Q:  So you said that if she had gotten it to you by the 21st, that would have been okay, right?
> A:  Before the 21st.  Before the determination had been made to terminate her.

*See Exhibit 7, Deposition of Jillaine Maes, page 84.*

> Q:  Okay.  Do you know when the decision to terminate Ms. Harville was made?
> A:  It was the end of December.  The middle to end of December.  I – I think between the 14th and the 20th is when the decision was made, but I would have to check the documents to be sure of the date.
> …
> Q:  Okay.  Who – how did you hear about it?
> A:   A letter was written by the HR department and sent to Dr. Ryan for her approval, and she showed it to me; and we discussed it at that time.
> Q:  When did she show it to you?
> A:  Between the 14th and the 21st, but I couldn't tell you for sure what date.  I'm not sure what day it was written.

*See Exhibit 7, Deposition of Jillaine Maes, pages 20-21.*

Maes' testimony shows that within a week of requesting more information, the Defendants had already made the decision to terminate Ms. Harville.  Nowhere in the December 11th e-mail request did anyone inform Ms. Harville that she might be terminated if she did not provide an updated FMLA certification, nor was Ms. Harville informed that she

might be denied FMLA leave.  Indeed, an FMLA certification form was never even provided to Ms. Harville in December 2009 at all.  It was on Ms. Harville's own initiative that she procured a new FMLA form, in good faith, and it was received by TAMU on December 23, 2009.  At this time, Ms. Harville was still not aware that she was terminated, and the Defendants had an opportunity to consider the updated FMLA form and retract the decision to terminate. However, because the decision was based on discriminatory and retaliatory animus, such a retraction was never considered.

> Q:  Okay.  Did either of you or anybody else in this loop have any discussion about retracting the decision to terminate her in light of this FMLA form?
> A:  No.

*See Exhibit 7, Deposition of Jillaine Maes, page 43.*

Furthermore, Ryan's testimony indicates that she considered Ms. Harville's failure to follow the daily reporting requirement as an additional rationale for the termination, and that it may not even have mattered if Ms. Harville had sent the FMLA certification at an earlier date.

> Q:  If you had received that form prior to December 21st, would it have satisfied your expectations?
> A:  There still would have been the previous problem of having not reporting in for so many days.  So the past that she had failed to live up to her expectations before – before – before the updated certification didn't negate the fact that she had failed to meet her expectations up until that point.

*See Exhibit 8, Deposition of Kathryn Ryan, page 40.*

However, it was not Ms. Harville that failed to live up to her expectations, but Ryan who failed to live up to hers by ignoring the admonition contained in Section 6.1.2 of the FMLA policy.  Moreover, it was not Ms. Harville's responsibility to send the updated FMLA form in order to put the Defendants on notice that she was going to be gone for longer than eight days a month.  University policy, so often cited by the Defendants in their defense, actually supports Ms. Harville in this instance as well.  The University's Family and Medical Leave Administration Manual ("FMLA manual") states, in Section 3.1:

Supervisors must notify the department's leave administrator when an employee absence indicates a potential need for FMLA leave. This need could be evident when an employee:

- misses more than three continuous days of work;

*See Exhibit 9, TAMU Family and Medical Leave Administration Manual, page 2.*

It is insufficient for the Defendants to state that they did not know that Ms. Harville's absence qualified for continuous FMLA leave simply due to the original certifications which stated that Ms. Harville may miss 2-8 days of work a month.  As per the FMLA Manual, "supervisors and managers must establish themselves as a first step in the FMLA leave process. Supervisors are not required to be FMLA "experts"; however, supervisors must know which types of absences indicate an FMLA-related condition."  *See Exhibit 9, TAMU Family and Medical Leave Administration Manual, page 2.*  Ryan's testimony provides further evidence that instead of recognizing Ms. Harville's absence as continuation of her medical condition requiring protection under the FMLA, she sought to use Ms. Harville's absence as a justification for termination.

A:  So there had been ongoing discussion with Guy Mortensen of the human resources department starting in October when she got an additional doctor's certification for her FMLA, and we initially met with him to discuss potential ADA implications.  But then also in mid November when she was still out for this extended period of time, I began asking him how to resolve this and how to resolve the issues about her not reporting in.
…

Q:  Okay.  At that point you knew she was on FMLA leave, right?
A:  In November, she as on FMLA leave for up to eight days a month.

*See Exhibit 8, Deposition of Kathryn Ryan, pages 32-33.*

It is unfortunate but telling that Ryan saw this as a problem to resolve, rather than understanding, as was her duty and requirement, that Ms. Harville's absence was protected under the FMLA.  Ryan refused to consider any number of days past eight as FMLA protected, despite her obligation to recognize such a situation.  She instituted draconian reporting

14

requirements and sought to have Ms. Harville terminated for not following them, in direct contravention to Section 6.1.2 of the FMLA policy.  Mortensen collaborated on this initiative with Ryan and ultimately approved Ryan's request.  Maes facilitated in the process by seeking to obtain daily reports from Ms. Harville, and sent FMLA certification requests which lacked FMLA certification forms.

Additional evidence indicates that Mortensen allegedly approved Ryan's termination request for discriminatory and non-legitimate reasons.   In a December 17, 2009 email, Mortensen states:

> While Ms. Harville's medical condition qualifies under FMLA and ADA, her behavior has taken her out of compliance with them. She has not met the University standards for reporting when sick, she has not met the requirements of her own doctor's restrictions for FMLA, she has been non-responsive to requests for additional doctor's statements and University leave reporting requirements, and she has now missed all work since mid-October.  This leaves the department no choice but to move for termination.  In the department Ms. Harville's work is related to conducting grant funded research and they desperately need to fill the position with an employee that can work.

*See Exhibit 5, Request for Termination.*

Mortensen recognizes that Ms. Harville's absence is FMLA related, but he still faults her for missing work during her 12 week protected leave period. He, like Ryan and Maes, also sought to hold Ms. Harville to the sick leave reporting requirements despite her lack of paid leave, and required her to report daily as per Ryan's requests, despite TAMU's FMLA policy stating that an employee's failure to abide by reporting requirements does not warrant denial of FMLA leave.  *See Exhibit 3, FMLA policy, page 6, Section 6.1.2.*  Most importantly, he highlights the Biology department's need for an employee who can work and states that the department has "no choice but to move for termination."  *See Exhibit 5, Request for Termination.*

The Fifth Circuit has held that a supervisor's negative reactions to the use of FMLA leave may be sufficient in certain circumstances to establish causation. *See  McArdle v. Dell Products, L.P.,* 293 Fed. Appx. 331, 338 (5th Cir.2008) (finding that allegations created an inference of causation where there was "evidence that [Plaintiff's] supervisor was 'frustrated' with his absences and expressed concern about his attendance."). Here, Mortensen's letter and Ryan's comments constitute evidence of their concern about Ms. Harville's use of FMLA leave and their displeasure with Ms. Harville's use of FMLA leave. These statements further support the conclusion that there remains a genuine issue of material fact as to the reason for Ms. Harville's termination. Terminating an employee who is eligible for FMLA leave and who continues to have leave-protected time left because the Defendants want to replace her with someone who can work is directly probative of their discriminatory animus towards Ms. Harville's medical condition and her need for FMLA leave. At a minimum, a fact question remains as to the true motives behind the Defendants' decision to terminate Ms. Harville and summary judgment is improper.

### 4. The Defendants, including Maes and Mortensen, Meet the Definition of "Employers" as Defined by the FMLA.

Defendants' Motion argues that Maes and Mortensen do not meet the definition of "employer" as defined by the FMLA. Under the FMLA, an "employer" is "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Factors to be considered in determining if an individual is an employer are: "1) the power to hire and fire the employee; 2) supervision and control of the employee's work schedule or conditions of employment; 3) determining the rate and method of payment for the hours worked; and 4) maintenance of employment records." *Watson v.* Graves, 909 F.2d 1549, 1553 (5th Cir. 1990). Under the FMLA, "the question becomes whether the defendant 'exercised sufficient control over Plaintiff's ability to take

protected leave to qualify as [an] employer under the FMLA.'" *Evans v. Henderson*, 2000 WL 1161075 (N.D. Ill. Aug. 16, 2000).  Thus, the ultimate question is "whether the individual had 'supervisory authority over the complaining employees' and 'is responsible in whole or part for the alleged violation.'" *Riodan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (*citing* 29 U.S.C. § 203(d)); *see also Rudy v. Consolidated Rest. Co., Inc.*, 2010 WL 3565418, *6 (N.D. Tex. Aug. 18, 2010) (Stickney, J.); *see also Cornforth v. University of Oklahoma Board of Regents,* 263 F.3d 1129 (10th Cir. 2001) (finding that a suit for money damages against a state official was not barred even if state monies may ultimately be used to satisfy a judgment obtained against a state official sued in his individual capacity).

Defendants' Motion is unclear as to whether it refutes Ryan's status as an employer under the FMLA.  Defendants' Motion concedes that Ryan "directed and supervised Plaintiff's day-to-day work."  *See Defendants' Motion, page 25.*  However, it argues that Ryan did not have final authority to control, approve, or deny FMLA leave.  This is precisely why Mortensen is also an employer under the FMLA for the purposes of this case.  In his December 17, 2009 email, Mortensen states that "Employee Relations turned this case over to Policy & Practice review because elements of ADA had been identified, and P&PR handles all ADA related cases.  I have handled the case ever since."  *See Exhibit 5, Request for Termination.* Furthermore, as explained above, Mortensen stated that "the department has no choice but to move for termination," condoning Ryan's request for termination and thereby approving the denial of Ms. Harville's FMLA leave.

Mortensen is Ms. Harville's employer under the FMLA because he had the power to fire her, Ryan is Ms. Harville's employer under the FMLA because she directed and supervised Ms. Harville's work schedule and conditions of employment, and Maes is an employer under the FMLA because she also supervised Ms. Harville's schedule and conditions of employment

in regards to reporting requirements while Ms. Harville was on leave, as well as maintaining Ms. Harville's employment records in her capacity as Human Resources liaison.

### 5. Defendants Mortensen, Ryan, and Maes Are Not Entitled to Qualified Immunity in their Individual Capacities.

Defendants Mortensen, Ryan, and Maes argue in the alternative that plaintiff's claims must be dismissed because, as government officials, they are entitled to qualified immunity. To decide whether Defendants are entitled to qualified immunity, the Court must determine whether plaintiff has evidence that Defendants' actions were objectively unreasonable in violation of a clearly established federal right. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). The plaintiff must show that evidence exists which would allow a fact finder to determine that Defendants' actions were objectively unreasonable in light of clearly established law at the time of the actions. *Id.* Qualified immunity shields state officials from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Jacquez v. Procunier*, 801 F. 2d 789, 791 (5th Cir. 1989) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In this case, however, the Defendants' conduct was objectively unreasonable and manifested a callous indifference to Ms. Harville's rights. *Id.* at 792. In the context of summary judgment, doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999). As explained herein, the plaintiff has met her summary judgment burden.

### a. The Defendants violated a clearly established federal right.

There is a two (2) step analysis a court should employ when examining the affirmative defense of qualified immunity. The first determination to be made is whether the constitutional right asserted was clearly established at the time of the alleged violation. *Siegert v. Gilley*, 500

U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).  The clearly established federal rights afforded under the FMLA are: (1) the right to take 12 work weeks of leave and (2) the right to return to your job or a comparable job after a qualifying absence.  *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir.1999).  The 12 work weeks of leave is renewed yearly, and can be calculated based on the employer's fiscal year rather than a calendar year if the employer elects to do so.  *Mahoney v. Ernst & Young LLP,* 487 F.Supp.2d 780, 785 (S.D.Tex.,2006) (finding that the employee's allotment of FMLA leave reset at the start of the employer's fiscal year when it elected to use its fiscal year, not a calendar year, for purposes of calculating FMLA leave).  As explained above, TAMU's University System Regulation 31.03.05 (the "FMLA policy") establishes that "an eligible employee may take up to 12 weeks of leave during a *fiscal* year for any of the following reasons."  (emphasis added)  *See Exhibit 3, FMLA policy, page 2, Section 2.1.*    Ms. Harville's status as an eligible employee is not in dispute. *See Defendants' Motion, page 14.*  TAMU's fiscal year "runs from September 1st through August 31st."  *See Exhibit 6, Leave Balance and Fiscal Years Website.*

Ms. Harville was terminated during the September 1, 2009 through August 31, 2010 fiscal year.  As explained above, Ms. Harville had only used 57 work days of leave when she was terminated.  This is less than the 12 work weeks of leave which Ms. Harville had a right to take under clearly established federal law.  Defendants' Motion concedes that Ms. Harville was entitled to FMLA leave.  *See Defendants' Motion, page 14.*  Defendants' Motion also concedes that Ms. Harville was terminated in December 2009.  *See Defendants' Motion, page 4.*  More precisely, Ms. Harville was terminated on December 21, 2001.  *See Exhibit 1, Termination Letter.*  At that point, Ms. Harville had used less than 12 work weeks of leave during the September 1, 2009 through August 31, 2010 fiscal year.  It is therefore also conceded that Ms. Harville was not returned to her job or a comparable job after a qualifying absence.  *See*

19

*Defendants' Motion, page 4.*

The Defendants argue that Ms. Harville's right to FMLA leave after the first eight work days in December was not clearly established.  This argument fails for numerous reasons. TAMU's FMLA Manual states in Section 3.1:

> Supervisors must notify the department's leave administrator when an employee absence indicates a potential need for FMLA leave. This need could be evident when an employee:
>
> - misses more than three continuous days of work;

*See Exhibit 9, TAMU Family and Medical Leave Administration Manual, page 2.*

Therefore, regardless of Ms. Harville's current medical authorization, the Defendants had a duty to recognize and understand that Ms. Harville's continued absence qualified as an FMLA event.  Secondly, Ms. Harville was never provided a new FMLA form by Maes to update, and eventually procured one on her own initiative.  Despite having received this form prior to Ms. Harville's awareness of the termination decision, the Defendants did not consider reversing their decision.  *See Exhibit 7, Deposition of Jillaine Maes, page 43.*  This shows that the Defendants did not truly care about receiving Ms. Harville's updated medical information, as they never sent her the forms to update, and did not reconsider their decision after receiving the forms when Ms. Harville procured them herself.  The Defendants were clearly aware or should have been aware that Ms. Harville's continued absence qualified as FMLA protected leave.  Because the Defendants violated clearly established federal right, summary judgment on this prong of the *Goodson* analysis would be improper.

### b.   The Defendants' Actions Were Objectively Unreasonable.

The second step of the qualified immunity test requires that this Court ascertain whether reasonable officials in McKinney and Chaffin's position would have thought their actions constitutional.  *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir.1992).  Because Ms.

Harville's FMLA rights were well established at the time of her termination, the Defendants' only defense would be whether they made a mistake of fact, or, put another way, whether each could have believed that their acts did not infringe Davis' indisputable FMLA rights.   The Defendants had a policy and disregarded it.   The Defendants did not even care to review the policy.   Ms. Harville did not violate the policy.   Ms. Harville was on protected FMLA leave. This is objectively unreasonably conduct.   Here, no reasonable official in the Defendants' position would or could ever believe that this type of retaliation, terminating Ms. Harville's employment, would not infringe Ms. Harville's FMLA rights.

The Defendants' Motion attempts to show that the Defendants' conduct was not objectively unreasonable by simply restating their argument that Ms. Harville violated Sick Leave policy notice requirements "by not contacting Dr. Ryan daily."   *See Defendants' Motion, page 27.*   As explained in A(1)(b) *supra,* the Sick Leave policy did not apply to Ms. Harville, as she was not on paid leave at the time of her termination, and *by its very words* does not allow for the denial of FMLA leave for violation of notice requirements.   Section 6.1.2 of the FMLA policy states:

> **Normal sick leave notice requirements apply for the paid portions of leave.** The notice must comply with the usual rules for requesting leave, except in emergency situations.   **However, FMLA leave may not be denied if the employee gives timely oral, written, or other notice of the need for leave, but fails to follow the system's or a system member's leave request procedures.**

(emphasis added)

*See Exhibit 3, FMLA policy, page 6, Section 6.1.2.*

Again, Ms. Harville was not on paid leave at the time of her termination.   Therefore, as per the policy that the Defendants rely upon, normal sick leave notice requirements would not apply.   Therefore, it is irrelevant whether an official in Defendants' position could reasonably determine that plaintiff violated the Sick Leave policy.   The Sick Leave policy's notice

requirements simply did not matter, and it was objectively unreasonably to apply them. Secondly, the Defendants' objectively unreasonable conduct is even more apparent because the policy goes on to state that FMLA leave may not be denied if the employee fails to follow the system's or a system member's leave request procedures.

Mortensen, Ryan, and Maes all attempted to enforce the draconian daily reporting requirement on Ms. Harville, and additionally, Mortensen and Ryan specifically cite to Ms. Harville's failure to notify a basis for terminating her. *See Exhibit 8, Deposition of Kathryn Ryan, pages 32-33 and 40. See Exhibit 5, Request for Termination.* Defendants' Motion specifically identifies Ms. Harville's failure to maintain daily contact while on FMLA leave as the basis for the Defendants' alleged reasonable determination to terminate her. *See Defendants' Motion, page 27.* Ms. Harville's alleged failure to follow this leave request procedure is not an objectively reasonable basis for terminating her, especially when TAMU's policy forbids that result. *See Exhibit 3, FMLA policy, page 6, Section 6.1.2.* At the very least, Ms. Harville's argument that the Defendants' conduct was objectively unreasonable in light of TAMU's policy is a question of fact that cannot be disposed of on summary judgment.

### B. ADA and Rehabilitation Act Retaliation

A claim of unlawful retaliation under the ADA and the Rehabilitation Act, as under Title VII, requires a plaintiff to make a prima facie case by showing that (1) he or she engaged in an activity protected by the ADA, (2) he or she suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action. *Lopez v. Kempthorne,* 684 F.Supp.2d 827, 868 (S.D.Tex. 2010). If the plaintiff establishes a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If such a reason is provided, the plaintiff must submit sufficient evidence that the proffered reason is a pretext for retaliation. *Id.* The employee must

show that but for the protected activity, the adverse employment action would not have occurred.  *Id.* Establishing an actual disability is not necessary to sustain an action under the ADA if the plaintiff can establish he was "regarded as disabled." *Rodriguez v. ConAgra Grocery Products Co.,* 436 F.3d 468, 475 (5th Cir. 2006).

> Under the ADA, a plaintiff is "regarded as" disabled if he:

> (1) has an impairment which is not substantially limiting but which the employer perceives as ... substantially limiting ...; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment. *Id.* at 476.

In order for Ms. Harville to prevail in her claims for discrimination under the ADA and the Rehabilitation Act, she needs to produce evidence demonstrating that the Defendants "entertain[ed] some misperception regarding [Ms. Harville] -- either that she has a substantially limiting impairment that she does not have or the impairment is not so limiting as believed." *Aldrup v. Caldera,* 274 F.3d 282, 287 (5th Cir. 2001).  The Rehabilitation Act incorporates a provision of the ADA, which makes discrimination unlawful where an individual has "opposed any act or practice made unlawful by this chapter." *See* 29 U.S.C. §§ 791(g), 793(d), 794(d), 42 U.S.C. § 12203(a).  Where an employee has a good faith belief that he is disabled or perceived as disabled, making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity.  *Lopez v. Kempthorne,* 684 F.Supp.2d 827, 869 (S.D.Tex. 2010).  Ms. Harville meets this standard.  Specifically, Ms. Harville has shown that prior to and following her FMLA leave, Defendant was aware of her medical condition.  Moreover, she has shown that she informed the Defendants that she would be going out on FMLA leave in for medical issues.  Defendants' Motion admits that the Defendants saw Ms. Harville's need to take FMLA leave as a request for accommodation.  *See Defendants' Motion, page 30.* Therefore, it is clear that the Defendants discriminated against Ms. Harville when they

terminated her based on their perception of a disability.

### 1. *Burden-shifting framework*

If there is no direct evidence of discriminatory intent, Courts rely on the *McDonnell-Douglas* burden shifting framework to determine whether an employer discharged an employee in retaliation the protected activities. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Specifically, once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination. *Id.*

The traditional *McDonnell-Douglas* burden shifting framework does not always apply in FMLA/ADA retaliatory discharge cases.  In some cases, the mixed-motive framework applies.  For example, the mixed motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).  Using the mixed-motive framework, (1) the employee must make a *prima facie* case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or – and herein lies the modifying distinction – (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination.  *Id. at 312.*  If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. *Id.*  The

employer's final burden "is effectively that of proving an affirmative defense." *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 355 (5th Cir. 2005).

In *Desert Palace*, the Supreme Court addressed specific evidentiary burdens under Title VII. The Court decided that a Title VII plaintiff does not face a heightened evidentiary burden in mixed-motive cases. *Id.* at 99, 123 S.Ct. 2148. Specifically, a plaintiff in a Title VII action need only provide circumstantial evidence of discrimination to be entitled to proceed under the mixed-motive framework. *Id.* Thereafter, the mixed-motive analysis and framework was addressed to cover many other types of discrimination statutes including FMLA claims. *See Rachid*, 376 F.3d at 310-12; *see also Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772, 786 (M.D.La.2004) (relying on *Rachid* to apply a mixed-motive analysis to an FMLA claim).

As previously briefed in A(1) *supra*, Ms. Harville has established her prima facie case of discrimination. Defendants alleged that these reasons include that Ms. Harville violated TAMU's Sick Leave Policy, did not make contact daily, and did not provide an "out through" date. The evidence simply does not support that Ms. Harville was a terrible employee on the cusp of termination. Rather, the evidence shows that Defendant was motivated to terminate Ms. Harville because of her FMLA leave and because of her ADA claims.

## IV.

### CONCLUSION

Based on the foregoing, substantial material fact issues exist, and summary judgment is not proper. As a result, Defendants' Motion for Summary Judgment should be denied. A proposed Order is attached.

Respectfully submitted

**SHELLIST | LAZARZ | SLOBIN LLP**

_/s/  Sidd Rao_
TODD SLOBIN
STATE BAR #24002953
MARTIN SHELLIST
STATE BAR #00786487
SIDD RAO
STATE BAR #24065947
3D/International Tower
1900 West Loop South, Suite 1910
Houston, Texas 77027
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic filing and/or First Class Mail on this the 5th day of April, 2011 to:

Erika M. Laremont
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711

_/s/  Sidd Rao_
SIDD RAO