UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISSA HARVILLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-1656 |
| | § | |
| TEXAS A&M UNIVERSITY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Pending before the Court is the defendants', Texas A&M University ("TAMU"), Guy Mortensen, Dr. Kathryn Ryan and Jillaine Maes, motion for summary judgment (Docket Entry No. 35).  The plaintiff, Melissa Harville, filed a response (Docket Entry No. 38), to which the defendants replied (Docket Entry No. 39).[1]  After having carefully reviewed the motion, the responses, the record and the applicable law, the Court grants the defendants' motion in its entirety.

### II.    Factual Background

The plaintiff was terminated from her research assistant position at a TAMU laboratory, and she now asserts various employment discrimination and retaliation claims against TAMU and three of its employees.  From May 2008, until her termination on December 21, 2009, the plaintiff worked in a TAMU Biology Department lab run by Ryan.  The plaintiff's essential onsite job duties included executing experiments, attending lab meetings, teaching lab techniques to students and maintaining necessary lab supplies.  TAMU is a public institution of higher

---

[1] The plaintiff also filed a sur-reply (Docket Entry No. 40).  The defendants filed a motion to strike her sur-reply (Docket Entry No. 41), to which she responded (Docket Entry No. 43).  The Court granted the defendants' motion to strike (Docket Entry No. 45).

education, Mortensen was TAMU's Director of Policy and Practice Review during all relevant times, Ryan is a TAMU Assistant Professor and Maes is a TAMU Assistant Department Head.

During her first year of employment, the plaintiff accumulated numerous unexcused absences for various reasons, including illness, her children's illnesses and running errands.  In May 2009, Ryan gave the plaintiff her first annual performance evaluation, in which she indicated that the plaintiff did not meet expectations regarding her quantity of work and initiative.  Ryan noted that the plaintiff's number of unscheduled absences directly impacted the amount and timeliness of work completed, as well as the types of experiments that Ryan could assign to her.  Ryan also noted that some of the plaintiff's absences were foreseeable and should have been planned.

In July 2009, the plaintiff was given FMLA leave and was told to remain in contact with her work area as required by her department and TAMU's policies.  On July 14, Dr. Joseph Martin diagnosed the plaintiff with a thyroid nodular goiter and hypothyroidism.  Martin released her to work on July 20, but he certified her as possibly needing frequent breaks and permitted her to miss work episodically for up to three days per month until November 2009.  The plaintiff did not return to work on July 20.

On July 21, the plaintiff notified her lab that she would be absent, mentioned another appointment, and said she might be out for the rest of the week.  By July 28, the plaintiff had still not returned to work, so Maes wrote her requesting an updated medical form within fifteen days.  The plaintiff timely provided this updated form, which released her to work on August 24, with episodic leave of up to three hours per month.  The plaintiff alleged car trouble on August 24, and returned to work on August 25.  At that time, Ryan and Maes met with her, and Ryan instructed her to keep a regular work schedule and to contact Ryan if she was going to be absent.

The plaintiff only worked a regular schedule four of the eight following work days. Ryan emailed the plaintiff to remind her of her attendance and notification requirements. In addition to medical reasons and errands, the plaintiff missed work because of meeting with her child's teacher and depositing her paycheck.

On September 14, Ryan gave the plaintiff a memorandum concerning her attendance and performance. Also in September, the plaintiff submitted another updated medical certification regarding her thyroid issues and migraine headaches, which cleared her for work with up to two days of episodic leave per month. By September 28, the plaintiff had missed almost four days of work. She obtained an updated medical certification in October that cleared her for work, but permitted her up to eight days of episodic leave per month through January.

The plaintiff stopped coming to work on October 19. She reported her absences for the next eight work days, but not the ninth. The following week, she reported in during her absences for four days, and on the fourth day, she advised that she would return November 10. Meanwhile, sometime in October, Mortensen advised Ryan and Maes to ask the plaintiff what kind of accommodation she sought. They did not ask her because she never returned to work.

On November 10, the plaintiff untimely reported that she would not be coming to work. Ryan again urged the plaintiff to be more conscientious about reporting her absences. The plaintiff missed the next two weeks of work without reporting to Ryan. On November 30, the plaintiff emailed Ryan saying that she was still sick, but that she intended to return when able. Ryan responded, reminding her to report daily or to provide an "out through at least" date.

On December 14, Ryan spoke to Mortensen again, and Mortensen determined that the plaintiff's current number of absences far exceeded the amount of FMLA leave authorized by her current medical certification. Mortensen also determined that the plaintiff had violated TAMU's

policies by not following the department and Ryan's notification requirements.   Mortensen drafted a termination letter that Ryan approved.   Because neither of them had termination authority, Dr. U.J. McMahan and Dean Joseph Newton approved their recommendation to terminate the plaintiff on December 21.[2]  By this point, from the time she first requested FMLA leave time in July 2009 until her termination, she had taken off all of July, August 1-24, seven days in September, fourteen days in October, all of November and December 1-21.  The plaintiff filed suit on May 7, 2010.[3]  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.    Contentions of the Parties

### A.    The Plaintiff's Contentions

The plaintiff claims that Mortensen, Ryan and Maes, in their individual capacities, discriminated and retaliated against her in violation of the Family Medical Leave Act ("FMLA")[4] by terminating her for exercising her FMLA rights.   She also claims that those three defendants, in their official capacities, discriminated and retaliated against her in violation of the Americans with Disabilities Act Amendments Act ("ADA")[5] and the Rehabilitation Act of 1973 ("RA")[6] by terminating her because of her real or perceived disability.   She asserts her RA claims against TAMU as well.

---

[2] Although the termination letter is dated December 21, 2009, it was not mailed on that date.  TAMU closed for the winter holidays on December 22.  Maes mailed the letter on December 28, certified, but the plaintiff did not pick it up from the post office.  Meanwhile, the plaintiff had emailed Maes with an updated medical certification.  Maes received this email in January when TAMU re-opened, at which time she noted that the plaintiff had not retrieved her termination letter and emailed it to her.

[3] The plaintiff timely filed a complaint with the Texas Workforce Commission – Civil Rights Division, received a Notice of Right to Sue, and then timely filed this suit.

[4] 26 U.S.C. § 2601, *et seq.*

[5] 42 U.S.C. § 12102, *et seq.*

[6] 29 U.S.C. § 791, *et seq.*

The plaintiff avers that, prior to termination, Maes continually harassed her about being absent from work.  She also maintains that the defendants are still harassing her by causing the Texas Workforce Commission to deny her unemployment benefits on three separate occasions. She seeks damages, injunctive relief, reinstatement and attorney's fees.

### B.      The Defendants' Contentions

Regarding the plaintiff's FMLA claims, the defendants maintain that, at a minimum, neither Mortensen nor Maes were the plaintiff's employers.  They assert that all three of the defendant employees are protected by qualified immunity.  They claim that the plaintiff's excessive and unpredictable absences negatively impacted Ryan's lab because, *inter alia*, certain experiments require Ryan's research assistant to observe and continue experiments over the course of three consecutive days.  They maintain that as a result of the plaintiff's absences, Ryan's lab lost materials and had to redo experiments, thus increasing costs while decreasing productivity.  They deny discriminating or retaliating against the plaintiff for exercising her FMLA rights.  They aver that, even if the plaintiff can establish a *prima facie* case for FMLA interference or retaliation, the defendants had legitimate, non-retaliatory reasons for each of their employment actions.  Regarding the plaintiff's ADA and RA claims, the defendants maintain that she cannot show that she could perform the essential functions of her job, that her requested accommodation was unreasonable and that she cannot establish retaliation.

## IV.   Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant

bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine

issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).   Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.    Analysis and Discussion

The Court grants the defendants' motion for summary judgment in its entirety.  Because the plaintiff's absences far exceeded the amount of her medically permitted FMLA leave, and because she cannot establish that she could perform her essential job functions while excessively absent from work, her claims fail as a matter of law.  She has not shown that the defendants denied her any FMLA, ADA or RA rights, nor can she prove that they discriminated or retaliated against her.  "[T]he employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Chacko v. Texas A&M Univ.*, 960 F.Supp. 1180, 1189 (S.D. Tex. 1997) (quoting *EEOC v. Louisiana Office Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995)).

This case presents an unfortunate plaintiff unsuccessfully trying to balance her health problems with her personal and work life, and a university lab that must operate within certain temporal, geographic and financial parameters.  After the plaintiff surpassed her permitted leave and exhausted the reasonable accommodations made for her, her employer made the permissible decision to terminate her.  Finding no disputed genuine issues of material fact, the Court grants the defendants' motion for summary judgment for several reasons.  First, the Court determines that the plaintiff may only assert her FMLA claims against her actual employer rather than against all of the defendants.  Second, the Court determines that Ryan, Mortensen and Maes are protected by qualified immunity with respect to the plaintiff's FMLA claims.  Alternatively, the Court also determines that the plaintiff cannot establish FMLA claims against them.  Next, the Court holds that the plaintiff has not and cannot establish ADA or RA claims of discrimination or retaliation against any defendant.

### A.     FMLA

The Court grants the defendants' motion regarding the plaintiff's FMLA claims.  The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under" the Act.  29 U.S.C. § 2615(a)(1).  In addition, the FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" by the act.  29 U.S.C. § 2615(a)(2).  The FMLA mandates that an employer grant eligible employees "a total of 12 workweeks of leave during any 12-month period" if the employee has "a serious health condition that makes [her] unable to perform the functions of [her] position."  29 U.S.C. § 2612(a)(1).  Upon returning from FMLA leave, that employee is entitled to return to her previous position, or to an equivalent position.  29 U.S.C. § 2614(a)(1).

Leave may be taken intermittently if medically necessary. 29 U.S.C. § 2612(b)(1). Employers may not penalize an employee for exercising her FMLA rights. 29 U.S.C. § 2615(a)(1). Nor may employers "deter employees' participation" in FMLA-protected activities. *Arizmendiz v. Univ. of Texas at El Paso*, 536 F.Supp.2d 710, 715-16 (W.D. Tex. 2009) (internal quotation omitted).

However, an employee taking intermittent leave must notify her employer as soon as practicable of her intent to take FMLA leave on particular dates if those dates were initially unknown. 29 C.F.R. § 825.302(a). Further, "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements" regarding the duration of her leave. 29 C.F.R § 825.302(d); *see also, Sherrouse v. Tyler Refrigeration Corp.*, No. 3:03-CV-1716-H, 2004 WL 1124722, *5 (N.D. Tex. May 20, 2004). For the multiple reasons set forth below, the Court determines that the plaintiff's FMLA claims fail as a matter of law.

### 1.    Employment Status of Mortensen and Maes

Before determining whether the plaintiff's FMLA claims have merit, the Court must first determine against whom she can assert those claims. The Court grants the defendants' motion regarding her FMLA claims against Mortensen and Maes because it determines that they are not the plaintiff's "employers" as defined by the FMLA. The FMLA imposes liability upon employers that are subject to FMLA requirements. *Hunt v. Rapides Healthcare Systems, LLC.*, 277 F.3d 757, 763 (5th Cir. 2001). An FMLA "employer" is "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). This definition differs from a Title VII "employer," but it is substantially

identical to an "employer" under the Fair Labor Standards Act ("FLSA").  *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006).

An FLSA "employer" includes individuals with "managerial responsibilities" and "substantial control of the terms and conditions of the work of [the] employees."  *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  In determining whether a defendant is an FLSA or FMLA employer, the Court must determine whether an individual "effectively dominates [the employer's] administration or otherwise acts, or has the power to act, on behalf of the [employer] vis-à-vis its employees."  *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).  However, individual liability does not automatically accompany supervisor responsibility; even among those in "supervisory positions, [t]he FMLA does not contemplate holding individuals liable for corporate violations."  *Burris v. Brazell*, No. 3:06-CV-0815-K, 2008 WL 5220578, *2 (N.D. Tex. Dec. 15, 2008) (citing *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006)).

To determine if an individual is an employer under the FMLA, the Court considers "whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (internal citations omitted) (regarding FLSA employers).  Courts consider whether a purported employer "independently exercised control over the work situation."  *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (internal citation omitted).  This requires both a sufficient level of control and a nexus to the protected rights at issue as to each defendant.  *Donovan*, 747 F.2d at 972 (holding individual liable because "[i]t was only he who could authorize compliance with the [FLSA]").  Therefore, "[t]he ultimate question is whether the individual had 'supervisory authority over the complaining employee'

and is 'responsible in whole or part for the alleged violation.'" *Rudy v. Consolidated Rest. Co., Inc.*, No. 3:08-CV-0904-L, 2010 WL 3565418, *6 (N.D. Tex. 2010) (citing *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)).

The Court determines that Mortensen and Maes are not the plaintiff's employers under the FMLA.  Neither Mortensen nor Maes had the authority to exercise any independent control over whether the plaintiff could take leave.  *See Donovan*, 747 F.2d at 972.  They did not supervise the plaintiff's day-to-day duties or activities, nor did they have the authority to control TAMU's compliance with the FMLA.

While Mortensen may have requested the plaintiff's termination on the department's behalf, he did just that: requested it.  Mortensen, acting alone, did not have the authority to terminate the plaintiff's employment.  Mortensen gave his proposed termination letter to Ryan, who in turn sought approval of the appropriate authorities.  Requesting a termination or condoning an adverse employment action does not equate to the having the authority to execute these employment decisions unfettered.  *See Id*.

Likewise, the plaintiff has presented insufficient evidence that Maes supervised her schedule and conditions of employment or maintained her employment records.  Maes was not the plaintiff's supervisor.  Maes determined the plaintiff's FMLA eligibility, but she did not control the plaintiff's day-to-day work.  Maes was a messenger, but neither she nor Mortensen had "the power to act" on TAMU's behalf, "vis-à-vis its employees."  *Reich*, 998 F.2d 329.  Because these defendants were not the plaintiff's employers under the FMLA, the Court grants the defendants' motion regarding her FMLA claims against Mortensen and Maes.

### 2.    Qualified Immunity

Additionally, the Court grants the defendants' motion regarding Ryan, Mortensen and Maes because they are shielded by qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted); *see also, Gentilello v. Rege*, 627 F.3d 540, 547 (5th Cir. 2010) (applying qualified immunity in suit by professor against public university supervisors).  "[Q]ualified immunity is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Swint v. Chambers of County Commission*, 514 U.S. 35, 42 (1995) (internal quotation omitted).

Regarding the first prong, the plaintiff cannot show that the defendants' conduct violated a "*clearly established* federal right."  *Harlow*, 457 U.S. at 818 (emphasis added).  At the time of her termination on December 21, 2009, the plaintiff had missed more than the eight days per month that she was medically authorized to miss during October, November and December, and any further FMLA eligibility was unknown.  Thus, at the time of her termination, whether she would have been entitled to more FMLA leave was not "clearly established."  *Id.*

As to the second prong, the plaintiff cannot establish that the defendants' actions were "objectively unreasonable."  *Id.*  The defendants could reasonably believe that termination was warranted because the plaintiff often missed work and violated her employer's policy by not contacting Ryan daily after being told repeatedly to do so.  Thus, the doctrine of qualified immunity protects these defendants "from civil damages liability" because they were "performing discretionary functions" and "their actions could reasonably have been thought

consistent with the rights they are alleged to have violated." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992) (internal quotations omitted).   Moreover, the qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).   Thus, even if the defendants were wrong to terminate the plaintiff, they are entitled to qualified immunity as long as their conduct was reasonable or subject to differing opinions.   Accordingly, the Court grants the defendants' motion regarding the plaintiff's FMLA claims for this additional reason.

### 3.    Interference

Moreover, the plaintiff's FMLA interference claim also fails because she cannot demonstrate that the defendants denied her FMLA leave or benefits.  *See* 29 U.S.C. § 2615.  She complains that she was denied FMLA leave because, at the time of her termination, she had not exhausted all of the time to which she was entitled.  From when she first requested FMLA leave in July 2009, until her termination in December 2009, she took off all of July, August 1-24, seven days in September, fourteen days in October, all of November and December 1-21.  Although, the plaintiff was instructed to inform Ryan if she was going to be absent, none of TAMU or Ryan's requirements were prerequisites to the plaintiff's FMLA eligibility, and they do not rise to the level of FMLA interference.  *See* 29 C.F.R. § 825.302(a) (an employer may require an employee on intermittent FMLA leave to give notice of her absences "as soon as practicable"); *see also,* 29 U.S.C. § 2614(a)(3)(B).

Tellingly, the plaintiff's repeated failure to report in pre-dated her FMLA request. Terminating someone while on FMLA leave does not necessarily equate to an FMLA violation. *See Sherrouse v. Tyler Refrig. Corp.*, No. 4:03-CV-1716-H, 2004 WL 1124722, *4-5 (N.D. Tex.

May 20, 2004) (adopting 7th Circuit reasoning that the "FMLA does not protect an employee who violates her company's 'usual and customary notice and procedural requirement' regarding . . . leave."); *see also*, 29 C.F.R. § 825.216.  At the time of her termination, the plaintiff was only approved for eight intermittent FMLA leave days per month, and she had not informed anyone at TAMU whether any given day that she was absent was an FMLA leave day.  Further, some of her absences were unrelated to her illness.  Thus, the Court finds no genuine issue of material fact regarding the defendants' alleged FMLA violations.

Also, as for the plaintiff's assertion that Maes denied/interfered with her FMLA rights by denying her request for sick leave pool hours, this assertion confuses the limits on her sick leave pool pay with her right to FMLA leave.  First, the FMLA does not mandate paid leave.  *See* 29 U.S.C. § 2612(c)-(d).  Second, it was the Sick Leave Pool Administrator who determined the plaintiff's eligibility for those hours, and Maes merely relayed the information.  Third, that administrator had approved the plaintiff for up to sixty-four hours of sick leave pool pay per month, which was the number of hours authorized in her latest submitted medical certification. Thus, the Court grants summary judgment for the defendants on this issue for this supplementary reason.

### 4.    Retaliation

Additionally, the plaintiff has failed to establish an FMLA retaliation claim.  Generally, the *McDonnell Douglas* burden-shifting framework applies to determine whether an employer terminated an employee in retaliation for exercising her FMLA rights.  *Hunt*, 277 F.3d at 768 (internal citations omitted); *see also*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[7]  Here, a modified *McDonnell Douglas* framework – a mixed motive framework –

---

7 The Fifth Circuit has restated the *McDonnell Douglas* burden-shifting framework as follows:

applies because the plaintiff alleges that discrimination was a motivating factor in her termination rather than the sole reason for it.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003).  Using this mixed motive framework, if the plaintiff shows that her protected activity was a motivating factor for the defendants' contested actions, then the burden shifts to the defendants to show that the adverse employment decision would have been made regardless of any retaliatory animus.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal citations omitted).  Under this mixed motive framework, a plaintiff need not meet a heightened evidentiary burden to establish her *prima facie* case.  *Desert Place*, 539 U.S. at 98-99 (for a Title VII claim); *Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772, 786 (M.D. La. 2004) (for an FMLA claim).

If the plaintiff meets her burden, the employer's final burden "is effectively that of proving an affirmative defense."  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005) (internal citation omitted) (regarding an Age Discrimination in Employment Act claim). Although the plaintiff has established her *prima facie* retaliation case, the defendants have offered their "affirmative defense" by noting that the plaintiff violated TAMU's reporting policies by not contacting Ryan daily or giving her ranges of dates that she anticipated being absent.  *See Machinchick*, 398 F.3d at 355.

### a.    The Plaintiff's *Prima Facie* Case

The Court determines that the plaintiff has established her *prima facie* retaliation case that FMLA discrimination was a motivating factor in her termination because she has shown

---

      [T]he plaintiff must first establish a *prima facie* case of discrimination, and if she successfully does so, the defendant shall respond by setting forth its legitimate, non-discriminatory reason for its decision.  If the defendant produces a legitimate reason, any presumption of discrimination raised by the plaintiff's *prima facie* case vanishes.  However, the plaintiff may still avoid summary judgment if she demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination.

*Septimus v. Univ. of Houston*, 399 F.3d, 601, 609 (5th Cir. 2005).

that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and . . . [(3)] the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768 (internal citations omitted); *see also*, *Rachid*, 376 F.3d 312.   More specifically, she has shown that: (1) she engaged in the protected activity of requesting FMLA leave in July 2009; (2) she was terminated on December 21, 2009; and (3) the temporal proximity between those two events establishes the requisite causal link for a *prima facie* case.   *See Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 390 (5th Cir. 2008) (citing *Mauder v. Metro Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006) (emphasizing "temporal proximity" in the *prima facie* context)).

### b.      The Defendants' Legitimate, Nondiscriminatory Reasons for Their Actions

The  Court  determines  that  the  defendants  have  offered  legitimate,  nondiscriminatory reasons that the plaintiff would have been terminated regardless of her FMLA leave.   *See Hunt*, 277 F.3d at 768 (internal citations omitted); *see also*, *Rachid*, 376 F.3d 312.   An anti-retaliation statute does not allow an employee to violate company job requirements or work rules.   *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997).   Violations of work rules are legitimate,  nondiscriminatory  reasons  for  adverse  employment  actions.   *Mayberry  v.  Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).   The issue is whether the employer's perception of  the  plaintiff's  performance,  accurate  or  not,  was  the  real  reason  for  her  termination.   *See Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (internal citation omitted).

Ryan  told  the  plaintiff  on  at  least  five  occasions  to  report  her  absences  with  greater regularity.   On the days that she failed to notify Ryan of her absence, the defendants did not know  whether  she  was  exercising  her  FMLA  leave.   Although  she  clearly  and  knowingly violated her supervisor's reasonable policy, she was not denied FMLA leave.

As to the plaintiff's other specific assertions of retaliatory conduct, she first claims that Ryan gave her a negative evaluation in May 2009.  However, Ryan gave that evaluation before the plaintiff requested or took any FMLA leave.  Therefore, the plaintiff cannot establish that she received negative comments as a retaliatory result of taking FMLA leave.  Second, the plaintiff claims that Ryan and Maes denied her sick leave pool hours, but only the Sick Leave Pool Administrator – against whom the plaintiff has not asserted a claim – had authority to grant or deny that leave.  Third, the plaintiff claims that Ryan gave her a negative evaluation in September 2009.  However, the contested document is an "expectations memorandum" concerning the plaintiff's absence reporting requirements rather than an official evaluation, and the plaintiff's subjective belief does not turn this memorandum into an adverse employment action.  *See Forsyth*, 19 F.3d at 1537 (unsubstantiated assertions are not competent summary judgment evidence).

Finally, the plaintiff claims that Mortensen retaliated against her by selectively interpreting TAMU's policies, but this allegation does not establish that Mortensen interfered with her FMLA rights.  She has offered insufficient evidence that Mortensen had any retaliatory motive.  Mortensen based his permissible interpretation of TAMU policies on his review of those policies and the plaintiff's medical documentation.  In response, the plaintiff has offered only her subjective belief that his termination recommendation was made in retaliation for her taking FMLA leave.

Regardless of her FMLA leave, the plaintiff could have been terminated for repeatedly missing work in excess of her medical certification and for violating Ryan's reporting requirements.  The plaintiff's policy violations are legitimate and nondiscriminatory reasons for her termination.  She has failed to provide the Court with sufficient evidence that retaliation was

at the heart of the defendants' termination decision, or that the defendants' proffered reasons are unbelievable. *See Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Burdine*, 450 U.S. at 253).

### c. Pretext

Because the defendants have offered an affirmative defense by giving legitimate, nondiscriminatory reasons for their contested actions, the burden shifts back to the plaintiff to show evidence that the defendants' explanations were pretextual. *See Hunt*, 277 F.3d at 768 (internal citations omitted); *see also*, *Rachid*, 376 F.3d 312. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). That being said, "even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Rubenstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 402-03 (5th Cir. 2000) (internal citation omitted).

To carry her burden, the plaintiff must show that the defendants would not have taken the adverse employment action "but for" her participation in the protected activity. *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999) (regarding a Title VII claim). An employee may establish pretext "directly, by showing a discriminatory reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable." *See Rios*, 252 F.3d at 378 (citing *Burdine*, 450 U.S. at 253). However, in either respect, the plaintiff bears the burden of persuading the factfinder that the defendant

unlawfully retaliated against her.  *Rios*, 252 F.3d at 378 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)).

The plaintiff has not proven pretext.  First, it is irrelevant whether the defendants' mistakenly applied the sick leave policy rather than another policy when determining the plaintiff's notice requirements.  *See Mayberry*, 55 F.3d at 1091 ("The questions is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").  Second, the plaintiff's signed FMLA request from acknowledged that she "will be required to remain in contact with [her] work area as required by the policies of [her] department and [TAMU]."  Her failure to report as required was a legitimate ground for termination.  *See Miles-Hickman v. David Posers Homes, Inc.*, 589 F.Supp.2d 849, 875 (S.D. Tex. 2008).  She cannot prove that the same actions would not have been taken against her had she not taken FMLA leave.  Accordingly, the Court grants the defendants' motion on this issue for this additional reason.

### B.    ADA and RA[8]

The Court grants the defendants' motion regarding the plaintiff's ADA and RA claims.[9] Title II provides that "no qualified individual with a disability shall, by reason of such disability,

---

[8] The plaintiff's RA claims against Ryan, Mortensen and Maes in their official capacities duplicate her claims against TAMU.  A suit against a government official in his official capacity is a suit against his office rather than a suit against the individual, and it is no different than a suit against the government unit that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also, Hafer v. Melo*, 502 U.S. 21, 25 (1991).  "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978).  The plaintiff is suing TAMU directly while asserting the same RA claims against the individual defendants in their official capacities as TAMU employees.  Accordingly, the Court grants the defendants' motion regarding the plaintiff's RA claims against the individual defendants because those claims duplicate her claims against TAMU. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

[9] Except where otherwise noted, the Court will consider the plaintiff's ADA and RA claims together, because the two statutes provide parallel remedies.  *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133.  "The language in the ADA generally tracks the language set forth in the RA.  In fact, the ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

### 1.    Discrimination

The Court grants the defendants' motion regarding the plaintiff's ADA and RA discrimination claims.  To make a *prima facie* case of ADA discrimination, a plaintiff must show that she: "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was . . . treated less favorably than non-disabled employees." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

The ADA defines an individual's disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  *Bragdon v. Abbott*, 524 U.S. 624, 630 (1998) (quoting 42 U.S.C.A. § 12102(2)).  Thus, a plaintiff need not have an actual disability to sustain an ADA action if she can establish that she was "regarded as disabled."  *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 475 (5th Cir. 2006).

Under the ADA, a plaintiff is "regarded as" disabled if she has "a physical or mental impairment that does not substantially limit major life activities, but [she is] treated as such by an employer."  *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000) (internal citations omitted).  In that situation, a plaintiff must produce evidence demonstrating that a defendant "entertain[ed] some misperception regarding [the plaintiff] – either that he has a substantially limiting impairment that he does not have or the impairment is not so limiting as believed."  *Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001) (internal citation omitted).  The focus here is on the reaction and perception of the employers alleged to have discriminated

against the employee based on her perceived disability.  *See Deas v. River West, L.P.*, 152 F.3d 471, 476 n.9 (5th Cir. 1998).

However, the mere violation of the ADA alone does not establish injury.  Rather, the plaintiff must show that the defendants' ADA violation proximately caused her actual injury before she can recover.  *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir. 1998).  So, even if the plaintiff establishes that she was regarded as disabled, that is only the first element in her *prima facie* discrimination case.  *See Seaman*, 179 F.3d at 300 (internal citation omitted).  She must still establish the second element: that she "was qualified for the job."  *Id.*  Accordingly, she must demonstrate that she could perform her essential job duties.  *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993).  A "qualified" person must be "able to meet all of a program's requirements in spite of [her] handicap."  *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 406 (1979).

The plaintiff also bears the burden of suggesting a reasonable accommodation to her employer.  *Taylor v. Principal Financial Group*, 93 F.3d 155, 165-66 (5th Cir. 1996) (internal citation omitted).  However, an employer's duty to make reasonable accommodations does not require him to "relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties."  *Robertson v. Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998), *cert. denied*, 526 U.S. 1098 (1999).  Nor does the ADA require an employer to provide the "best" accommodation or the employee's preferred accommodation, but rather only an accommodation "sufficient to meet the [employee's] job-related needs."  *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (internal citation omitted).

Regardless of whether the plaintiff was actually disabled or perceived to be disabled, she has still failed to establish that she could perform her job's essential functions, which included being present in the lab to execute experiments, participate in lab meetings, teach students general lab techniques and maintain necessary lab supplies.  Where attendance is an essential aspect of the job, an individual who has frequent absences is unqualified.  *See Amato v. St. Luke's Episcopal Hosp.*, 987 F.Supp. 523, 531-32 (S.D. Tex. 1997) (unpredictable and sporadic absences prevent individual from asserting ADA claim because of undue burden placed on employer); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (employee recovering from ankle surgery and unavailable to work is not qualified individual under the ADA).

By October 19, 2009, the plaintiff was no longer taking intermittent leave, but rather an extended leave of two months.  The ADA does not require an employer to allow a disabled employee to take an indefinite leave for purposes of accommodation.  *Bennett v. Calabrian Chems. Corp.*, 324 F.Supp.2d 815, 837-38 (E.D. Tex. 2004) (internal citations omitted).  Furthermore, "FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision."  *Trevino v. United Parcel Serv.*, No. 3:08-CV-889-B, 2009 WL 3423039, *12 (N.D. Tex. Oct. 23, 2009) (citing *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001)).

The plaintiff's only evidence of requesting a reasonable accommodation is when she asked for intermittent FMLA leave.  TAMU did not fail to provide any kind of reasonable accommodation that the plaintiff requested, nor did it need to have accommodated the plaintiff's two month extended leave, which far exceeded the plaintiff's requested accommodation.  Therefore, the Court grants the defendants' motion on this issue.

###### 2.      Retaliation

The Court holds that the plaintiff cannot establish a retaliation claim because she could not perform her essential job functions, as explained above in Section **V(B)(1)**, *supra*.  Like Title VII, an ADA or RA claim requires that a plaintiff make a *prima facie* case by showing that: (1) she engaged in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected act and the adverse action. *Seaman*, 179 F.3d at 301.  Without direct evidence of discriminatory intent, courts again turn to the *McDonnell Douglas* burden shifting framework.  *See McDonnell Douglas Corp.*, 411 U.S. at 802-04.  And as explained in Section **V(A)(4)**, *supra*, the mixed motive framework applies. *See Desert Palace*, 539 U.S. at 101-02 (2003).10

The Court again finds that the plaintiff has not met her burden under this framework.  An employer has the right to set performance standards for its employees.  *Deines v. Texas Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999).  The plaintiff was terminated more than three months after requesting a reasonable accommodation, she missed more work than she was medically permitted to miss, and her failure to report her absences had been a problem even before she made her accommodation request.  These reasons are sufficient to warrant her termination.  Thus, the Court grants the defendants' motion on this issue.

---

10 The Court applies this mixed motive framework to the plaintiff's ADA claim, but not to her RA claim, because the RA requires a showing that defendants retaliated against her "solely" because of her disability.  29 U.S.C. § 794(a); *Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 504-05 (5th Cir. 2002).  Thus, the traditional *McDonnell Douglas* burden shifting framework still applies to the plaintiff's RA claim.  *McDonnell Douglas*, 411 U.S. at 802-04.  Because the Court finds that the plaintiff cannot survive scrutiny under the mixed motive framework analysis, neither can she survive scrutiny under a traditional burden-shifting framework.  Accordingly, the Court grants the defendants' motion with respect to the plaintiff's RA retaliation claim.

## VI.     Conclusion

Based on the foregoing discussion, the Court grants the defendants' motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED at Houston, Texas this 8th day of June, 2011.

_____
Kenneth M. Hoyt
United States District Judge